Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 11-14968(SHL)

4    Adv. Case No. 12-01054(SHL)

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    553 WEST 174TH ST LLC,

9

10             Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12    BINDER, ET AL.,

13               Plaintiffs,

14          v.

15   SE OPPORTUNITY FUND, LP, ET AL.,

16               Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18               U.S. Bankruptcy Court

19               One Bowling Green

20               New York, New York

21

22               November 6, 2013

23               10:04 AM

24

25

Page 2

```
1     B E F O R E :

2     HON SEAN H. LANE

3     U.S. BANKRUPTCY JUDGE

4

5

6

7     Hearing re:  Status Conference Regarding Orders Submitted On

8     Special Performance

9

10    Hearing re:  Adversary - Status Conference Regarding Orders

11    Submitted On Special Performance

12

13    Hearing re:  Doc. #25 Letter/Pre-Hearing memorandum Filed By

14    Claude Castro On Behalf Of Seth Miller, SE Opportunity Fund,

15    LP

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South
```

```
 1   A P P E A R A N C E S :

 2   BACKENROTH, FRANKEL & KRINSKY, LLP

 3        Attorney for the Debtor

 4        489 Fifth Avenue

 5        26th Floor

 6        New York, NY 10017

 7

 8   BY:  ABRAHAM BACKENROTH, ESQ.

 9

10   KLESTADT & WINTERS, LLP

11        Attorneys for Bryan Binder

12        570 Seventh Avenue

13        17th Floor

14        New York, NY 10018

15

16   BY:  TRACY L. KLESTADT, ESQ.

17        PATRICK J. ORR, ESQ.

18

19   CLAUDE CASTRO & ASSOCIATES PLLC

20        Attorney for SE Associates

21        444 Madison Avenue

22        Suite 500

23        New York, NY 10022

24

25   BY:  CLAUDE CASTRO, ESQ.
```

Page 4

1    LAW OFFICES OF GLENN BACKER

2         Attorney for Seymour Horowitz

3         280 Madison Avenue - Suite 300

4         New York, NY 10016

5

6    BY:  GLENN BACKER, ESQ.

7

8    MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

9         Attorney for Tillow Trust

10        990 Stewart Avenue

11        Garden City, NY 11530

12

13   BY:  ABRAHAM B. KREIGER, ESQ.

14

15   MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

16        Attorney for Tillow Trust

17        1350 Broadway

18        New York, NY 10018

19

20   BY:  EDWARD J. LOBELLO, ESQ.

21

22

23

24

25

1    MOSS & KALISH, PLLC

2         Attorney for Mr. Binder

3         122 East 42nd Street

4         New York, NY 10168

5

6    BY:  GARY N. MOSS, ESQ.

7

8    ALSO PRESENT:

9    LARRY LAZAR, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    P R O C E E D I N G S

2            THE COURT:  We have two matters on the calendar

3    for 10 o'clock, and something is on for 11:00, but obviously

4    we'll do the 10 o'clock first.

5            And the first case is 553 west 174th, which

6    involves the adversary proceeding, binder versus SE

7    opportunity.

8            So let me get appearances.

9            MR. KLESTADT:  Your Honor, good morning, Tracy

10   Klestadt of Klestadt & Winters, along with my partner,

11   Patrick Orr, we represent Bryan Binder.  I'm also here with

12   co-counsel, Gary Moss, and Larry Lazar from Moss & Kalish.

13           THE COURT:  All right.

14           MR. CASTRO:  Good morning, Your Honor, Claude

15   Castro of Claude Castro & Associates for SC Associates and

16   Seth Miller.  With me is Abraham Backenroth, bankruptcy

17   counsel.

18           MR. BACKENROTH:  Backenroth, Frankel & Krinsky

19   representing the debtor.

20           THE COURT:  All right.

21           MR. BACKER:  Good morning, Judge, Glenn Backer for

22   Seymour Horowitz (ph).

23           THE COURT:  All right.  Good to see you all again.

24   Oh, one more?

25           MR. KREIGER:  Actually two more appearances.

Page 7

1    Abraham Kreiger and my partner.

2            MR. LOBELLO:  Good morning, Your Honor, Edward

3    LoBello, Meyer, Suozzi, English & Klein for the Tillow

4    Trust, along with my partner Abe Kreiger.

5            THE COURT:  All right.  Good morning and welcome

6    back for folks I've seen in the previous parts of this case.

7            So this hearing was my idea in light of the

8    proposed order that I received and then the objection that I

9    received.  I didn't think it was something that -- that I

10   wanted to wing in terms of putting together the order and

11   going through the objections, so I thought it was productive

12   to hear from the parties.

13           And let me just float an idea that probably is not

14   ultimately a good one but I'll do it any way because it's

15   the first thing that struck me when I read the order --

16   proposed order.

17           The question is whether I need to issue something

18   as specific as what's in there.  Because the agreement is

19   the agreement, and so there's also -- sometimes less is

20   more, and there's always a concern, and perhaps

21   coincidentally this came up in the context of looking at a

22   financing order in another large 11, by repeating

23   everything, repeating you run the risk of leaving things out

24   and then the order gets longer and longer and then you have

25   to fight about what it means.

1          That said I think the parties have gone far enough

2    along that whether they agree with me or not, whether they

3    want to appeal or not, all of which is fine and everybody's

4    right to take whatever steps they want, I don't think

5    anybody wants to have unnecessary fights and inefficiency.

6          So that's the two poles and so I'll leave it to

7    the parties and tell me what your views are.

8          MR. KLESTADT:  Your Honor, thank you.  I will take

9    the initial credit for blame, as the case may be, for the

10   structure of the order.

11         Our thinking was, Your Honor, that given the

12   history of this case we should have an order that was as

13   detailed as possible for the steps of the closing so that we

14   would seek to avoid any further disputes.

15         In this case, Your Honor --

16         THE COURT:  No, and that's -- that's one of the

17   two schools, I understand that.

18         MR. KLESTADT:  Reaching an agreement has been

19   pulling teeth.

20         So my thought was, Your Honor, to have every step

21   of the closing detailed in the order so that the only thing

22   that the debtor or Mr. Miller had to do was accept money.

23   Everything else would have been spelled out, every step of

24   the closing, any deliverables that we had to provide,

25   everything would be spelled out.

1          Now the counter order of course says no, we'll

2    just go to the closing, and you know, we'll all be on our

3    way.

4          We're concerned, Your Honor, that that's – given

5    the history here that that doesn't work.

6          THE COURT:  Right.

7          MR. KLESTADT:  All right?  So what we tried to do,

8    Your Honor, was to spell out each step of the closing in

9    terms of adjustments, who would get certain funds, et

10   cetera.  We can go into some more detail, Your Honor, about

11   the escrow that we have suggested.

12         But, Your Honor, things like the closing costs,

13   the broker's commission, and the various claims that -- Your

14   Honor, this is obviously a very unusual situation given the

15   fact that you've got a bankruptcy case which was filed by

16   the debtor but now my client is going to end up controlling

17   the debtor as a result of the closing.  So we wanted to

18   spell out who was going to be paid from what funds.

19         We don't have a plan of reorganization here, Your

20   Honor, nor is one even potentially necessary.

21         THE COURT:  Right.  This is the case.

22         MR. KLESTADT:  We want -- the objective, Your

23   Honor, is for my client to be able to get title to the

24   property, not withstanding the fact that there's a joint

25   venture agreement, et cetera, get in essence free and clear

Page 10

1   title to the property, an owner has to be paid monies so

2   that there aren't subsequent claims.  Okay.

3           THE COURT:  All right.  That's fine.

4           Well then let me -- let me move on to the next

5   obviously question then is whether the parties have talked

6   about the order and the objections to the order in terms

7   narrowing whatever disputes that have to come in front of me

8   today.

9           MR. KLESTADT:  Well, we have conferred, Your

10  Honor.

11          Yesterday Mr. Castro filed a pleading which

12  there's a sentence in there that says we seem to be in

13  agreement on all points accept for the $700,000, which is,

14  you know, our position, Your Honor, is that because of the

15  default Mr. Binder is entitled to it.  They take a different

16  view.

17          If that's the only issue, Your Honor, with regard

18  to the order we're happy to escrow that as well and then

19  come back to you for a later determination as to whether

20  that's payable, or Your Honor, Mr. Binder may be entitled to

21  a slew of damages resulting from the breach and the three-

22  year delay and the cost that he's incurred, et cetera, et

23  cetera.  We can leave that for another day as well, we can

24  put the 700,000 into escrow.  If that's the only issue that

25  they have then our order can proceed and we can go to

1    closing.

2              THE COURT:  All right.

3              MR. BACKENROTH:  Your Honor, the approach of our

4    order is the same approach that is in every case, in every

5    bankruptcy case.  You sell a piece of property, those things

6    which are not in dispute are paid, those things which are in

7    dispute are escrowed.

8              Mr. Castro was actually more on top of the closing

9    issues, has been attempting to resolve, to narrow the

10   disputed items as opposed to the undisputed items so that

11   those things can be paid at the closing.

12             However, it's not appropriate in the submission of

13   an order relating to the sale of a property to determine

14   issues which are in dispute as part of the order itself.

15             THE COURT:  I -- here's what I want to do.  I

16   don't want to get bogged down in speeches, I want to go

17   through the order, right, so let's just do that.

18             But here's what I'm hearing, is that the $700,000

19   people disagree about what should happen to that.  I -- my

20   opinion didn't address that so we're going to table that and

21   everybody reserves their rights to make whatever arguments

22   and we'll figure it out.

23             I -- what I had understood was requested and the

24   trial was about whether one side or the other breached the

25   contract, and from the plaintiff's point of view that the

Page 12

1  breach would entitle them to specific performance meaning we

2  get the property.

3          So that's what I addressed in the opinion and

4  that's what I understood the order on specific performance

5  addressed.

6      So to the extent that having ruled on liability there

7  may be some unresolved damage questions.  Fine, so be it, we

8  can figure that out and I'll take suggestions about how to

9  do that.

10          But it sounds like the first thing that has to

11  happen is for the actual transaction to go through.

12          MR. BACKENROTH:  We are -- we are ready for the

13  transaction, but --

14          MR. KLESTADT:  Your Honor --

15          MR. BACKENROTH:  -- there are some other items --

16          MR. KLESTADT:  Excuse me back.

17          THE COURT:  Okay.

18          MR. BACKENROTH:  There are some other items which

19  are in dispute, they're a very substantial attorneys' fee

20  that is being requested.

21          THE COURT:  Yeah, I don't want to talk about --

22          MR. BACKENROTH:  And again, I just asked to escrow

23  it.  In other words there's no reason to --

24          THE COURT:  No, I understand.

25          MR. BACKENROTH:  -- reinvent the wheel.  That's

```
 1    the way it's done.

 2              THE COURT:  I don't need a speech on something I

 3    already made up my mind about.

 4              So here's --

 5              MR. KLESTADT:  Your Honor?

 6              THE COURT:  -- what I want to do.  Let's go

 7    through the order.  So --

 8              MR. KLESTADT:  Your Honor, if I may --

 9              THE COURT:  Yes, sure.

10              MR. KLESTADT:  -- just for purposes of going

11    through the order.  One overarching comment or principal if

12    I may.

13              We are looking to get title insurance in

14    connection with the transaction, and the line items that are

15    included in the order are the types of line items that a

16    title insurance company is going to be looking for and the

17    payments that'll be made are the types of things that the

18    title insurance company are going to be looking for.  My

19    colleagues can address that in some more detail.  But I just

20    want to make Your Honor sensitive to that as we're going

21    through the line items.

22              THE COURT:  Well, I think the first thing I threw

23    out was whether I needed to issue an order like this at all,

24    and I said that that's the first thing that came into my

25    head, but then I also said I think probably ultimately that
```

1    optimism is misplaced in this case given the history between

2    the parties, and I don't say that in a pejorative sense, I

3    just say that it's been a hotly contested case and that's

4    fine, that's why I'm here, and that under the circumstances,

5    and I think the back and forth has only confirmed that it's

6    appropriate, to issue an order that makes clear to everybody

7    where we stand, otherwise I think it'll probably be an

8    inefficient process for everybody involved.

9            So -- so here's what I'd like to do is to just go

10   through the objections to the proposed order that were filed

11   by Mr. Castro a little bit.  I'm trying to remember the

12   exact date, I think it was October 9th, and then I think the

13   pleading they filed yesterday was largely about the

14   $700,000.  I think we're going table that and then we'll set

15   a schedule for dealing with that after we get through the

16   order.

17           So I have the order -- proposed order in front of

18   me and I have his objections in front of me, and I think we

19   can safely skip paragraph 1 which is an introduction.

20           So paragraph 2 talks about the second ordered

21   paragraph to the extent that it has the words "as modified

22   herein."

23           I understood as modified herein to be essentially

24   since you're setting forth new dates that are different than

25   the contract this order by necessity does modify the

1    contract because the contract had -- that was one of the

2    disputes about whether time was of the essence and things of

3    that sort, so I understood as modified herein to be saying

4    that this order is essentially a modification of the

5    contract, to the extent that it has to be.  So that's how I

6    understood it.

7              So in light of that, I don't know, Mr. Castro, if

8    there's anything that you want to pursue on that point.

9              MR. CASTRO:  No, Your Honor, if -- yeah, as Your

10   Honor -- if it's clear that it's a matter of closing and

11   deadlines I have no objection to that.

12             THE COURT:  All right.  All right.  So we'll leave

13   that in.

14             MR. BACKENROTH:  Your Honor, perhaps we should

15   state that in the order, that it's a -- it has to do as to

16   deadlines, because --

17             THE COURT:  Okay.

18             MR. BACKENROTH:  -- when I read it I --

19             THE COURT:  Here's what I'd like to do.  I want to

20   talk to one person from a party, and I'm happy to have ears

21   by bankruptcy counsel, I'm happy to have you confer, I know

22   Mr. Castro is more than well versed in these matters so I'm

23   happy to hear from whoever.  It's just I think probably

24   going to be a little less productive to go back and forth.

25             So if you have proposed language that you'd like

Page 16

1    to insert I'm open to suggestions.

2           So first I'm looking for as modified herein and I

3    see --

4           MR. CASTRO:  Your Honor, I would suggest if I may,

5    that the modification should be limited to deadlines such as

6    closing dates to make sure that there are no substantive

7    modifications to the agreement.

8           THE COURT:  Well, you know, I want -- when I say

9    suggestions I want language and you tell me where the

10   language goes and that that's -- that's when I mean

11   suggestions, that's what I want.

12          MR. CASTRO:  All right.

13          THE COURT:  So I'm looking for the second -- so

14   the second ordered paragraph says "shall perform under

15   certain joint venture agreement dated October 8th as

16   modified herein."  I mean the only thing the order does is

17   have dates and details.

18          So since the order is an order I'm having -- I'm

19   having trouble seeing as how there's any need to narrow it

20   any further, because otherwise, right, the order does what

21   it does.  So --

22          MR. CASTRO:  Your Honor, may I suggest --

23          THE COURT:  How about -- how about this.  I won't

24   use modified.  Perform under that certain joint venture

25   agreement dated October 8th, 2010 --

 1            MR. CASTRO:  May I suggest as enforced herein?

 2            THE COURT:  I really think we're rearranging the

 3    deck chairs on the Titanic a bit, but --

 4        (Laughter)

 5            THE COURT:  -- I'm just --

 6            MR. CASTRO:  As provided herein, Your Honor?

 7            THE COURT:  I'm just going to say and this order.

 8            MR. CASTRO:  Okay.

 9            THE COURT:  Perform under that certain joint

10    venture agreement and this order, which is -- it's the same

11    thing, but that's fine.  It's different words.

12            All right.  So the next paragraph 3 complains the

13    second ordered paragraph should be deleted because it

14    conflicts with the ordered paragraph.

15            What is it that should be -- provides that a

16    closing date may be accelerated.

17            MR. CASTRO:  In other words, Your Honor, the

18    paragraph before that provides for a closing date seven days

19    from the date of the order or seven days after the order

20    becomes non-appealable.  And then the following order gives

21    Mr. Binder the ability to accelerate.

22            THE COURT:  All right.  Let me hear from --

23            MR. KLESTADT:  All right.  Well, Your Honor, a

24    couple things.

25            Number one the dates now have to be changed.  We,

1   you know, had submitted this --

2           THE COURT:  Right.

3           MR. KLESTADT:  -- some time ago and we're now

4   going to start -- depending upon where we are we're going to

5   start running into the holidays, et cetera, I'm going to

6   have to Mr. Binder to (indiscernible - 00:14:52) on a date

7   to close.

8           THE COURT:  Right.  Well, here's the thing.

9           MR. KLESTADT:  But --

10          THE COURT:  My concern about that paragraph though

11  is that it requires cooperation, and that is not something

12  that has been a hallmark of the parties' relationship here.

13  So I'm a little worried that that paragraph will mean that

14  we end up back here.  So I'd rather set a date.  And so I'm

15  open to a date, figuring out a date now so when we have the

16  prior paragraph on the later or whatever date or seven days

17  from this order becomes final and non-appealable.  So --

18  because I'm just concerned about accelerating the closing

19  date that people will say well, it's accelerated and we

20  don't agree because I just again think that that's --

21          MR. KLESTADT:  Your Honor, what this was intended

22  to address was trying to close, if you will, on the first --

23  within a reasonable time after the order became final and

24  non-appeal.  I don't know whether plaintiff -- excuse me --

25  the defendant is going to appeal the order.  We then have a

1    different set of considerations in terms --

2              THE COURT:  Right.  Well, I have no problem with

3    saying that it's got to be within seven days after the order

4    becomes final and non-appealable.  I mean let's set that

5    date.  I mean I just want to have a date.

6              MR. KLESTADT:  Well, Your Honor, we may decide to

7    -- we may want to close and take the risk because they

8    haven't received a stay pending appeal.

9              THE COURT:  Right.

10             MR. KLESTADT:  So that's why, you know, we had to

11   have the alternative mechanism.

12             THE COURT:  Well, but I think if you say you're --

13   you say you want to close seven days after it becomes final

14   appealable -- non-appealable -- well, I see what you're

15   saying.

16             MR. KLESTADT:  Yeah.  If they appeal without a

17   stay we can still decide to close and take the risk.

18             THE COURT:  Well then fix the prior paragraph and

19   not make it the later of.  How about to say the earlier of a

20   particular date or seven days after it's non-appealable?

21             MR. KLESTADT:  I think that works.

22             THE COURT:  All right.  So the prior paragraph

23   will say the earlier of --

24             MR. KLESTADT:  Your Honor, can I have a moment?

25             THE COURT:  Sure.

1          (Pause)

2               MR. MOSS:  Your Honor, my name is Gary Moss.

3               I don't understand their position, because we're

4     contemplating closing -- accelerating the closing to a date

5     in the second decretal paragraph that we're talking about,

6     and that will take the burden of paying all the expenses

7     associated with the property off their shoulders.  We want

8     that discretion.

9               THE COURT:  Well here's -- here's my problem.  You

10    say accelerate the closing to a new date.  When I read that

11    I see new date, and what I envision is a call to chambers or

12    an email to chambers saying we don't agree with the date,

13    they're trying to improperly pick a date, we don't agree

14    with that date.

15              I understand as a matter of the transaction what

16    the intent is and what it may -- may result in.

17              My concern is that -- is that a new date won't

18    lead to an objection, it will lead to more litigation and

19    more arguments and another hearing.  That's my concern.

20              MR. MOSS:  Our view is that if they do appeal this

21    this can drag on for many, many months.

22              THE COURT:  Yeah, but let's just set a date for

23    closing then.  If the --

24              MR. MOSS:  But that would --

25              THE COURT:  -- you say -- so here's my concern.

1    It is Monday, the closing is supposed to happen in 14 days.

2    Under this paragraph Mr. Binder, in his sole discretion,

3    decides to accelerate it to the following Monday, they say

4    they're not available.  You say it's our sole discretion

5    we've set it.  They say, well, our client is not available,

6    we're not coming.  Someone picks up the phone, calls me and

7    says, no, first I'll write a letter.  And I get one letter

8    then I get two letters, then I get a memorandum.  I'm not

9    doing that.

10           So I understand what you're trying to do, but

11   anything that is subject to a possible dispute I suspect

12   will become an actual dispute.

13           MR. MOSS:  Okay.  But if you make it the earlier

14   of --

15           THE COURT:  All right.

16           MR. MOSS:  -- and that forces us to close then we

17   have title issues.

18           THE COURT:  All right.  That's fine.

19           MR. MOSS:  The title company won't --

20           THE COURT:  Then we'll leave that as it is.  My

21   concern is the ability to pick a new date that will be the

22   subject of a dispute.

23           MR. MOSS:  We can put in a reasonable notice by

24   agreement of the parties.

25           THE COURT:  I think that's how we ended up here in

Page 22

1    the first place isn't it?  Right?  I mean I think that's the

2    trial.

3              So again, I just --

4              MR. KLESTADT:  Your Honor --

5              THE COURT:  -- the one thing I think everybody can

6    agree upon is that this should be one stop shopping, and

7    while the parties will not -- may not be happy with it they

8    will agree that they're really just not going to have to

9    look at each other again for the most part, so that's my

10   concern.

11             MR. KLESTADT:  Your Honor, the simplest is to

12   delete that paragraph with the discretion, right?

13             THE COURT:  Yeah.

14             MR. KLESTADT:  Okay.

15             THE COURT:  I mean if that would -- that would

16   resolve my concern.

17             MR. KLESTADT:  And that's -- we would agree to

18   that.

19             THE COURT:  And if that -- if that means that you

20   want to pitch a date in the prior paragraph --

21             MR. KLESTADT:  And I think --

22             THE COURT:  -- that's a little earlier than you

23   might have otherwise because we've had some time that it's

24   taken to get here.

25             MR. KLESTADT:  What I'll suggest, Your Honor,

1   instead of November 1st, 2013, January 15th or January 31st

2   of 2014 given the holidays, the entry of the order, explain

3   it to the title company, et cetera.

4           THE COURT: Okay. So what date do you want?

5           MR. KLESTADT: January 31st, 2014.

6           THE COURT: All right. This is all subject to

7   parties agreeing obviously to if you agree to make a change

8   and say we want to do that sooner. Someone mentioned

9   closing costs and that there'd be some benefit, why would

10   they object? That's fine, you can always do it by

11   agreement. But that means that it's not subject to dispute.

12   All right.

13           MR. CASTRO: Your Honor, if I may, two issues.

14           I'd like some language to confirm that we will get

15   an updated title report.

16           THE COURT: Okay. I'm going through your

17   objection --

18           MR. CASTRO: Okay.

19           THE COURT: -- we're doing that first and then

20   I'll address any other issues.

21           MR. CASTRO: And the other issue that we have to

22   address, Your Honor, we have a mortgage that came due

23   November 1st and we're pushing this closing to January 31st.

24           THE COURT: What do you want me to do about it?

25   You made objections, I couldn't decide them without hearing

1   from the parties, I had to get the parties in.  Since that

2   happened the City Opera case filed here, and the Atlantic --

3            MR. CASTRO:  Okay.

4            THE COURT:  -- Express case filed here, I've had a

5   few other things to do.  We're here now, we're going to pick

6   a date.

7            MR. CASTRO:  Okay.

8            THE COURT:  Somebody won, somebody lost, this is

9   an order to make the contract go forward.

10           So you want to work out something separately none

11  of this is abar to doing that, but this is designed to work

12  if no one reaches any agreement.

13           MR. CASTRO:  Okay.

14           THE COURT:  All right.  So moving right along.  I

15  think we're up to the objection paragraph 4 talking about

16  the entire balance of the purchase price being paid to

17  Backenroth, Frankel & Krinsky and escrow should be in

18  accordance with the JV agreement as opposed to setting forth

19  who the money should go to.

20           So let me hear from --

21           MR. KLESTADT:  All right, Your Honor, the

22  intention here is the following.

23           As I said earlier, my client may have claim for

24  damages against SE Opportunity Fund, which is the joint

25  venture party.  All right?  There's a bankruptcy case

1    pending.  Those funds are going to -- the claims, including

2    my client's claim, we have a proof of claim on file, will

3    have to be addressed.  The funds should not go into a debtor

4    in possession account for any use.  This debtor has no

5    business other than, you know, the -- you know, the

6    circumstances that we're involved with here.

7            The funds should be deposited into Mr.

8    Backenroth's escrow account for -- you know, subject to

9    disposition by further order of the Bankruptcy Court once

10   the claims against the debtor are adjudicated.

11           THE COURT:  Well, I think as I understand the

12   objection is that it's to the fact that it spells out so

13   much is supposed to go to the Tillow Trust, so much is

14   supposed to go to --

15           MR. KLESTADT:  That's right.  In other words any

16   after the closing costs are paid, amounts for the title

17   company, amounts for Mr. Tillow, real estate taxes, whatever

18   they are, whatever the residual is should then go in

19   Mr. Backenroth's escrow pending further order of the

20   Bankruptcy Court.

21           MR. CASTRO:  Your Honor, if I may address that.

22           THE COURT:  Sure.

23           MR. CASTRO:  For example, on their Exhibit A under

24   closing costs they have an amount to First American Title

25   for $163,829.96.

Page 26

1            We had a conference call between myself,

2    Mr. Lazar, and a representative of the First American Title

3    Insurance Company, because I didn't understand what that

4    covered.  To the extent there are real estate taxes

5    obviously those have to be paid and we've asked for an

6    update.  But what we were told is that they want a transfer

7    tax of $121,000.

8            Now I spoke again to the representative of First

9    American and reminded him, which he told me he was not aware

10   of, that the transfer tax was paid when the property was

11   sold by Mr. Tillow.

12           THE COURT:  Well let me ask you a question.  Is --

13   when you say First American Title Insurance Company the

14   checks to be written at closing have two entries for that.

15   The first is a specified amount of $163,829.96.  The second

16   says, "Bank check payable to First American Title Insurance

17   Company, the same entity, and then it says, "To be

18   determined."

19           Is what you're talking about under 2 or under 3?

20           MR. CASTRO:  Under 1, Your Honor.

21           That 163,000 that's broken down is 121- and 18-,

22   these are transfer taxes.  And the transfer taxes have

23   already been paid on this transaction when the building was

24   sold by Mr. Tillow to 153.  There is, as far as we know, no

25   basis for paying another transfer tax on this transaction.

Page 27

1              More importantly, this transaction has already

2      been insured by another title company, and what we suggest

3      on doing is simply getting that title company, which already

4      insured the transfer of the deed, to --

5              THE COURT:  Have the parties had this

6      conversation?  Because I got to say I add no --

7              MR. CASTRO:  We spoke.  We spoke.

8              THE COURT:  -- value added.  So where are we on

9      this?

10             MR. KLESTADT:  Your Honor, First American is a

11     reputable title company, they're taking the position that in

12     order to issue a title policy the transfer tax is payable.

13             Mr. Castro thinks that it's not payable that it's

14     duplicative they can apply for a refund.  But for my client

15     to get a title policy this amount has to be paid.

16             THE COURT:  Are you representing First American

17     Title says this is the way it has to be done or the

18     transaction can't close?

19             MR. KLESTADT:  Your Honor, I have a copy of the

20     title -- of the invoice with the items listed from First

21     American, this is what they were going require.

22             THE COURT:  All right.

23             MR. CASTRO:  Yeah, but I spoke to the

24     representative yesterday.

25             THE COURT:  Okay.  If you can work out some deal

Page 28

1    that's less than that that's fine.  If that's a

2    representation about what it's going to take to close your

3    client doesn't get a chance to go to trial and then have it

4    adjudicated and say this specific insurance is required and

5    then decide what that looks like.

6            If you can work out something and say this is too

7    much, it's been handled this way, it's been handled that way

8    and you can do it to everybody's satisfaction that's fine.

9            First American Title I think was the company that

10   handled --

11           MR. CASTRO:  No.

12           THE COURT:  -- the initial transaction?

13           MR. CASTRO:  No.

14           THE COURT:  No?

15           MR. CASTRO:  That's the point, Your Honor.  We had

16   Madison Abstract.  They've already insured title.

17           MR. KLESTADT:  Your Honor --

18           THE COURT:  I know, but you don't -- you don't get

19   to dictate how this closes.  Your client went to trial and

20   lost.  And so they are going to close this transaction if

21   it's reasonable, if they're using First American Title

22   they're using First American Title.

23           MR. CASTRO:  But, Your Honor, I --

24           THE COURT:  You can work out something.  Maybe you

25   say well, we can get the money back ask you'll get a certain

1    percentage of it, we'll get a certain percentage of it.

2    Fine, that's fine.  This is the danger of having me involved

3    in this kind of detail.

4              MR. CASTRO:  I agree.  But Judge, I spoke to

5    Mr. Bergman (ph) at First American yesterday after we had a

6    conference call.  I told him did you know that --

7              THE COURT:  Well then work it out.  Then work it

8    out and give me something --

9              MR. CASTRO:  That's my point, I want to work it

10   out, but --

11             THE COURT:  No, but you are not going to work it

12   out through me.

13             MR. CASTRO:  I'm not trying to.

14             THE COURT:  If you have a conversation and you get

15   -- can I see the letter from First American?  I mean this is

16   ridiculous that I'm spending time on this.

17             MR. CASTRO:  No, this is an invoice.

18             THE COURT:  I've got -- I know, but that's why --

19   that's why I asked whether it's being represented that First

20   American say this is what it needs to close.

21             MR. CASTRO:  But they're being told that they're

22   insuring title for the first time.  We're not selling real

23   estate, Judge, we're transferring interests in an LLC.

24             THE COURT:  I don't care.  If you work out

25   something where it can be done cheaper fine.  I have

1    adjudicated this, the transaction has to close, this is one

2    of the risks you take, so be it.  If you work out something

3    that is cheaper and acceptable to all parties, because after

4    all that's the tierney of the Bankruptcy Court.  Money

5    talks.  So if you work out something that's cheaper and

6    everybody benefits I'm sure you'll be able to work something

7    out.  If you can't then you can't, then there's no

8    agreement.

9              This is a -- this is a reputable title company,

10   that's who they're using to close, that's who you use to

11   close.  There's no allegation that they're getting the

12   money, the money is going to First American so be it.  It is

13   what it is.

14             If you figure out something that is cheaper and

15   everybody benefits then I'm sure you can -- you can amend

16   this or figure some other way to --

17             MR. CASTRO:  Your Honor, what I suggested is that

18   this money be held in escrow.  I'm not suggesting that we

19   get the money.  That it be held in escrow and let us address

20   that issue.  If it --

21             THE COURT:  If the money is being paid to First

22   American to close how can it be held in escrow and have the

23   transaction close?

24             MR. CASTRO:  Because, Your Honor, the transaction,

25   all it requires is for the assignment of the interests.

1    We're not selling real estate.

2              THE COURT:  You're telling me what the title

3    company has to do.  He says one thing, you say another.

4    It's a reputable title company, it's chosen.  You want to

5    work out a better, cheaper solution fine.

6              MR. CASTRO:  But can I -- may I bring my title

7    company, Your Honor, they already insured this.

8              THE COURT:  I'm done.  I'm done.  This order is

9    fine.  If you want to work out something that's better and

10   you want to amend it fine.

11             Next -- that objection is overruled.

12             MR. CASTRO:  Your Honor, are we making -- if I may

13   just for the record.  Are we making First American the sole

14   arbit (sic) of this issue?  They may be wrong.  And I

15   think --

16             THE COURT:  I have been -- it has been represented

17   to me to be very clear that First American is the title

18   company to be used by the plaintiff here, Mr. Binder to

19   close a transaction that I found in an opinion and decision

20   that the plaintiffs are entitled to specific performance.

21   Your client, who lost that decision after a trial, does not

22   get to dictate how specific performance should be

23   accomplished.

24             I am hearing your objections, I'm agreeing with

25   some of them, I'm disagreeing with this one.  I'm

Page 32

1    disagreeing with this one because First American -- it's

2    represented to me First American needs this amount of money

3    that's accounted for in this order under the breakdown to

4    close.

5              As I said now for the third and for the last time,

6    because we're done with this, if you reach a conclusion or

7    an alternative that is cheaper for all the parties that

8    everyone agrees to I am fine with that.  But this particular

9    dispute, like pretty much everything else in this case, has

10   not been the subject of any agreement, which is why we spent

11   a considerable amount of time in this very courtroom on this

12   case.

13             So that's it.  If you want to work out something

14   that's cheaper fine.  If you don't I'm going with First

15   American, it's a reputable title company.  And based on the

16   representation given to me that this is what it's going to

17   take to close the transaction.  That's what's going to be in

18   there, so.

19             MR. CASTRO:  Your Honor, if I may just for the

20   record.  Because --

21             THE COURT:  No.

22             MR. CASTRO:  -- they --

23             THE COURT:  No.  We've spent ten minutes on this

24   now, I have a whole courtroom for 11 o'clock, I've got a

25   courtroom from 2 o'clock.  No, there's no more to talk

1    about.

2         So the fourth ordered paragraph, that objection is

3    overruled.

4         The fifth ordered paragraph is about the $700,000

5    escrow.  That $700,000 escrow will be the subject of further

6    proceedings as necessary in terms of where that money should

7    go.  It should be held in escrow.  Is there any dispute

8    about how it should be held in escrow?  I hesitate to ask.

9         MR. KLESTADT:  Well, Your Honor, it's going to be

10   held with Mr. Backenroth, and that's fine.

11        THE COURT:  All right.  Is that acceptable?

12        MR. CASTRO:  Yes, Your Honor.

13        THE COURT:  All right.  So lost the other one, you

14   won that one.  That's how these things work out.

15        So the ninth ordered paragraph we're now on the

16   objection number 6.

17        MR. KLESTADT:  Your Honor, that objection was to a

18   prior draft of the order that the reference to an automatic

19   dismissal of the case is not in our order.

20        THE COURT:  All right.  So is that resolved to

21   your satisfaction, Mr. Castro?

22        MR. CASTRO:  I believe so, yes.

23        THE COURT:  All right.  So the seventh paragraph

24   talks about the tenth ordered paragraph about claims for

25   damages, which I think has been already addressed in

1   connection with the $700,000.  Am I correct about that?

2           MR. KLESTADT:  Well -- just bear with me, Your

3   Honor.

4           THE COURT:  Sure.  I mean we'll have further

5   proceedings.

6           MR. KLESTADT:  I have to count tenths.  The tenth

7   ordered paragraph is now the notice of pendency removal.  So

8   I'm not sure which paragraph he was looking for.

9           THE COURT:  Mr. Castro, can you help us out and

10  let me know where --

11          MR. KLESTADT:  Oh, maybe it's the thirteenth one,

12  the bottom of page 5.

13          THE COURT:  Oh, nothing in this herein or in the

14  memorandum decision --

15          MR. CASTRO:  That's it.

16          THE COURT:  -- shall be deemed an adjudication of

17  the issue of damages.

18          All right.  Is that -- was that an objection to

19  that language or --

20          MR. CASTRO:  Yes, Your Honor.

21          THE COURT:  Okay.  And what's the -- what's the

22  objection to that language?  It basically says nothing in

23  this order deals with damages and parties reserve their

24  rights.  So what -- what conceivable objection could there

25  be to something that prejudices no party in any way?

1          I suspect that your objection is to a prior

2     iteration of that paragraph and it's been changed to reserve

3     everyone's rights.

4          MR. CASTRO:  No, I'm specifically discussing the

5     issue of damages.

6          MR. KLESTADT:  Your Honor, in the next --

7          MR. CASTRO:  I think what I was saying is that

8     instead of being in this order that this is something that

9     we can discuss in some kind of status conference to see what

10    we're going to do.

11         MR. KLESTADT:  Your Honor, page 6 at the top of

12    the page there's a paragraph that says, "Please schedule a

13    status conference."

14         MR. CASTRO:  Right.

15         THE COURT:  I don't see anything objectionable

16    about the paragraph at the bottom of page 5.  It says

17    nothing in any -- in this order or the memorandum decision

18    adjudicates the issue of damages from the breach.  I think

19    that's essentially a reservation of rights.  And then it

20    goes on to say and quote, "All parties reserve their rights

21    to subsequently seek such an adjudication," which I think is

22    also appropriate.  And the next paragraph sets a status

23    conference --

24         MR. CASTRO:  That's fine, Your Honor.

25         THE COURT:  -- on the matter.  All right.

1              MR. CASTRO:  That is fine.

2              THE COURT:  All right.  So --

3              MR. CASTRO:  I have one other issue, Judge.

4         There are other payments, for example, on the

5    mortgage, and I've raised that issue earlier.  We, on behalf

6    of SC and Seth Miller, had requested a payoff letter from

7    Mr. Tillow.  Initially we were told that we were not

8    entitled to it, then we were told that the numbers are

9    attached to Exhibit B of the proposed order.

10             THE COURT:  Well you said a payoff letter from

11   Mr. Tillow?

12             MR. CASTRO:  On the mortgage so we know exactly

13   what's due.

14             THE COURT:  Oh, all right.  Mr. Tillow is not --

15             MR. CASTRO:  Because that's --

16             THE COURT:  -- a part -- well --

17             MR. CASTRO:  It's an item that has to be paid at

18   the closing.

19             THE COURT:  All right.

20             MR. LOBELLO:  Your Honor, if I may heard on that?

21             MR. CASTRO:  May I finish?  May I finish?

22             THE COURT:  Sure.  I think you were finished, so

23   I'm going to hear from him and then I'll hear from you

24   again.

25             MR. CASTRO:  I'm not finished.  Okay.

```
 1              THE COURT:  Mr. Castro you're making an already
 2     difficult case even more difficult.
 3              I would note that what you're talking about now --
 4     I'm giving you some latitude -- it's not in your objection,
 5     it's not in your subsequent memorandum on these issues.  So
 6     it's a freebie.
 7              So at this point I'm going to hear from
 8     Mr. Tillow's attorney, who's not even a party to the
 9     bankruptcy.  So it's very unclear that I have any
10     jurisdiction over him at all.
11              MR. LOBELLO:  Your Honor, I'll be brief.
12              I just wanted to be -- I had provided a payoff
13     statement on October 7th and that was part of the submission
14     to Your Honor.  It was Exhibit B to Mr. Binder's proposed
15     order.  So that's been floating out there for 30 days and
16     it's a detailed statement as to what the first mortgage
17     holder is due, and we've been patiently waiting for two
18     years for our money.
19              I'd like it clear that there is no dispute with
20     respect to this.  I only heard from Mr. Castro yesterday
21     saying geeze, I'd like some detail.  Well this has been out
22     there for 30 days, I really don't want to prolong this.  I
23     think that we're entitled to the monies that are listed in
24     our schedule.
25              And in addition since the closing may -- is going
```

Page 38

1    to spill out into the future, originally the closing we

2    anticipated would be October 31st, all right, wanted it to

3    be very clear that obviously the per diem interest rate that

4    is set forth in Exhibit B obviously continues to accrue.

5              THE COURT:  You've decided not to spin your wheels

6    as the parties try to get all the other pieces ready to go.

7              MR. LOBELLO:  Yes, Your Honor.

8              THE COURT:  That's a more than fair position I

9    think.

10             So is there any reason we can't work off of that

11   statement and then update it for purposes of what your

12   client needs?

13             MR. CASTRO:  One reason, Your Honor.  We have no

14   -- obviously no objections with the principal amount, the

15   interest payments, these things they are what they are.  And

16   as I said, I had requested a payoff letter, which is

17   normally done when you do a closing.  They give you a

18   statement, what's owed so that you know at the closing how

19   much is due.

20             THE COURT:  But he doesn't even know what the

21   closing date is, so --

22             MR. CASTRO:  I understand, but if we have a per

23   diem we can work that out.

24             But, for example, Exhibit B, which was attached to

25   the order, I didn't know where that information came from.

1     There's 102,000 for legal fees and accounting fees and

2     another $3,500 for legal fees.

3              THE COURT:  And that is all dealing with

4     Mr. Tillow.

5              MR. CASTRO:  Yes.

6              THE COURT:  All right.

7              MR. CASTRO:  And that's why I wanted a breakdown

8     of these things so that we know exactly what they're seeking

9     and whether or not they're appropriate.

10             Now I can tell you that the mortgage as my reading

11    of it does not provide for accounting fees.  And my reading

12    of that mortgage also does not provide for legal fees.  So

13    that's an issue that has to be resolved.

14             And the reason we're raising it, just so that we

15    know exactly what's due at the closing.

16             THE COURT:  I tell you your client -- the hallmark

17    of your client's actions is not reasonableness, because all

18    this is stuff that should be discussed and worked out.  And

19    the fact that every single thing is the subject of dispute

20    really does not bode well for your client's actions in this

21    case, which is consistent with my liability finding.

22             But let me hear from Mr. Tillow.

23             MR. CASTRO:  Your Honor --

24             THE COURT:  And I'm not -- I will warn you now I'm

25    hearing all this stuff but I am going to have a very, very

1    short fuse for getting this closing done.  It has taken a

2    long time to get to this point, we had a trial, somebody

3    won, somebody lost.

4            The idea of criticizing Mr. Tillow who's

5    essentially collateral damage in this case waiting around

6    until the other two parties to the transaction has gotten

7    their act together just strikes me as a bit beyond the pale,

8    because I think at this point all Mr. Tillow gets out of

9    this is the ability to pay his attorney.

10           So let me hear -- so I'm going to be very

11   sympathetic to Mr. Tillow's desire not to gin up on a

12   regular basis, new payoff letters, new information for a

13   closing that has not yet been set.

14           So I'm assuming that as we get closing to an

15   appropriate date that such information will materialize.

16           MR. LOBELLO:  Your Honor, the -- Mr. Castro

17   indicated that the mortgage does not provide for

18   professional fees, and I've never seen a mortgage that

19   didn't provide for professional fees.  And quite frankly

20   this mortgage also does provide for professional fees.

21   "Mortgagor must pay all expenses of mortgagee, including

22   reasonable attorneys' fees if mortgagee is made a party in a

23   suit relating to the property" -- which I think that this

24   Chapter 11 case really has been - "or mortgagee sues anyone

25   to protect or enforce mortgagee's rights."

1          So I -- I echo the Court's sentiment, I think it's

2     preposterous that my fee might -- Mr. Tillow's fees for

3     really not being all that aggressive.  We didn't come in to

4     make a motion for bad faith filing, we didn't make a motion

5     to lift the stay, we tried to let the parties work out the

6     issues themselves.  We did have to incur certain expenses to

7     get an adequate protection stipulation to make sure the

8     property was inspected, to make sure there was insurance, on

9     and on and on and on.

10          So I really don't think it's fair that

11     Mr. Tillow's fees are being questioned at this stage

12     especially on the eve of the hearing when this October 7

13     payoff statement, which had that number, is in everyone's

14     possession for 30 days.

15               THE COURT:  All right.  Mr. Castro?

16               MR. CASTRO:  Your Honor, let me be clear.  This

17     was an Exhibit B to an order.  I did not know where this

18     information came from.  And I specifically requested a

19     payoff from Mr. Tillow, which is traditional on a closing.

20     The response that I got was a letter, and I'd like to hand

21     it up if I may, saying --

22               THE COURT:  I don't want it.

23               MR. CASTRO:  But let me tell you what it said.  It

24     said that SE Opportunity and Mr. Seth Miller are not

25     entitled to a payoff letter and that our request was

Page 42

1    rejected.

2         Now when I got this and I spoke with Mr. LoBello I

3    didn't come --

4         THE COURT:  I suspect your client has engendered a

5    certain amount of hostility from all other participants in

6    this transaction and that some of that hostility is coming

7    back at him in the form of a lack of cooperation at this

8    point.  That doesn't advance the ball.

9         So I mentioned getting this transaction done, but

10   you know, that's -- that's what your mother would say, you

11   reap as you sew.  So your client really should -- should be

12   aware of that.

13        MR. CASTRO:  But --

14        THE COURT:  My first question is you got up and

15   said he's not entitled to attorneys' fees.  He got up and

16   read me something from the mortgage saying he is.

17        MR. CASTRO:  Your Honor, the mortgage says they're

18   entitled to --

19        THE COURT:  No, he just read it to me.  So do

20   you --

21        MR. CASTRO:  I understand, but we -- I disagree

22   respectfully that the filing of this bankruptcy created

23   litigation that would -- that triggered that provision.  I

24   disagree with it and Your Honor can disagree with me, but

25   it's an issue --

1              THE COURT:  I do.

2              MR. CASTRO:  -- that I'm raising with the Court.

3              THE COURT:  Based on what -- based on what I just

4       heard litigation regarding the property, this entire case

5       has been about one thing and one thing only, the property.

6              MR. CASTRO:  And then accounting fees are not

7       something that are recoverable either, and there's no

8       breakdown in that 102,000 figure as to what's what.  And

9       that's all I requested, a breakdown.

10             THE COURT:  All right.  I would ask that

11      Mr. Tillow's counsel provide a breakdown of what the

12      professional fees are, to the extent you haven't done that

13      already, and I think you're titled to that.

14             MR. CASTRO:  Your Honor, let me just make --

15             THE COURT:  But I will say at the rate we're going

16      the meter is running.  So every hearing, and I suspect this

17      may not be the last hearing, although I fervently hope that

18      it is.  So we'll see.  So I would imagine Mr. Tillow's

19      counsel and Mr. Tillow has not been anxious to run those

20      numbers until he knows all this is done.

21             MR. CASTRO:  Your Honor, let me just make a

22      statement.

23             I've had maybe three or four conference calls

24      with counsel trying to resolve these issues.  We didn't come

25      in here without making that attempt.

Page 44

1            The issue of the transfer tax in my opinion is a

2    legitimate issue, Your Honor.  And I want to let you know

3    that I spoke with First American yesterday, the

4    representative said --

5            THE COURT:  Whey are going backwards?  Do we --

6            MR. CASTRO:  Because you're making -- you made a

7    statement that my client is somehow doing this in an

8    nefarious manner.  It's a legitimate issue --

9            THE COURT:  I am making the statement that your

10   client has not operated in the past in good faith, I so

11   found after a trial and after listening to your client sit

12   in that very witness stand.

13           MR. CASTRO:  I understand.

14           THE COURT:  And I am saying that based on what I'm

15   hearing today your client appears to be the kind of person

16   who decides to make every argument, period.

17           There's some arguments that you raised that are

18   very reasonable about the $700,000 and there's been no

19   finding of damages.

20           But I got to say as your attorney you can tell him

21   that I said that he should take your advice to get out of

22   dodge at the right time and not nitpick about some things

23   that I've got to say really undermine the position of your

24   client entirely.

25           MR. CASTRO:  I agree with you, but --

1           THE COURT:  Such as coming in and saying he's not

2    entitled to attorneys' fees based on what I just heard from

3    the document, and the fact that I will take -- certainly

4    I'll make the finding right now based on Mr. Tillow's

5    participation I was wondering how much I would see of

6    Mr. Tillow or not in this case, and I thought Mr. Tillow's

7    counsel did an excellent job of straddling that line and

8    being here to protect his rights, but not running up the

9    meter and did not actively participate in a way that I

10   thought was over the top.

11          So I don't want to talk about characterizations,

12   I'm trying to essentially warn your client that at a certain

13   point I'm going to start attaching fees and other

14   consequences if I perceive that this closing does not

15   proceed as is required by my decision.

16          You want to appeal the decision great, that's

17   entirely your right, but until then it stands, and absent a

18   stay it will go forward.

19          So I ask you send that message to your client,

20   because there's some serious issues here that shouldn't be

21   in front of me because they should be something that could

22   be worked out.

23          MR. CASTRO:  Your Honor, I hear you, I will

24   certainly pass the message.  But I want you to understand

25   one thing.  The issue, for example, of the transfer tax, I

1   spoke with the representative, he said they have to review

2   it based upon the information that I gave him.  And my only

3   point is obviously if that amount is due we will pay it.

4   It's currently being reviewed by First American as we speak.

5   And all I --

6               THE COURT:  I already ruled on First American.

7               MR. CASTRO:  I understand.

8               THE COURT:  I don't want to hear --

9               MR. CASTRO:  I wanted you to understand where we

10  come from on that issue.

11              THE COURT:  I understand it, I have a set of

12  objections and I have a set of papers you filed yesterday.

13  I have read them all.  I made a ruling about First American,

14  I'm not going backwards.

15              So I believe I've gone through all the objections

16  to the proposed order and then looking at defendant SE

17  Opportunity Fund and Seth Miller's prehearing memorandum of

18  law that's at docket number 25, that I think safely can be

19  characterized as all dealing with the $700,000 deposit.

20              MR. CASTRO:  Correct.

21              THE COURT:  I agree with you, that money will be

22  held in escrow.

23              So those are my rulings.  I'd ask that a modified

24  order be submitted to my chambers and I will enter it as

25  soon as I get it if it's consistent with my rulings.

1          Anything else that we need to address here today

2      other than a date for any other proceeding about damages or

3      is that premature?

4          MR. KLESTADT:  It's not premature, Your Honor.  I

5      think that it would be appropriate to set a date at least

6      for a status conference, and --

7          THE COURT:  All right.  How far out?

8          MR. KLESTADT:  May I have a moment, Your Honor?

9          THE COURT:  Sure.

10     (Pause)

11         MR. KLESTADT:  Your Honor, some time in early

12     February?  So the assumption that we'll close the

13     transaction and then come back to you.

14         THE COURT:  All right.  Let's make it February 4th

15     at 10 a.m., if that works for Mr. Castro and any other

16     interested party.

17         MR. CASTRO:  It will work.

18         THE COURT:  So I will -- that date can be filled

19     in in the order --

20         MR. KLESTADT:  February 4th at 10 o'clock, Your

21     Honor?

22         THE COURT:  Yes.

23         MR. KLESTADT:  Thank you.

24         THE COURT:  And so is there anything else that

25     needs to be addressed today for purposes of entering this

1    order?

2            MR. KLESTADT:  I think that's everything, Your

3    Honor.

4            THE COURT:  All right.  So please submit a revised

5    copy to chambers as well as obviously a copy to all the

6    other interested parties at the same time.  I don't think

7    the order changed a whole lot so there shouldn't be anything

8    new in connection with that.

9            MR. KLESTADT:  Thank you very much, Your Honor.

10            THE COURT:  Thank you.

11            MR. CASTRO:  Thank you, Your Honor.

12            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

13        (Whereupon these proceedings were concluded at 10:53

14    AM)

15

16

17

18

19

20

21

22

23

24

25

Page 49

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn
     South

     Digitally signed by Dawn South
     DN: cn=Dawn South, o, ou,
     email=digital1@veritext.com,
     c=US
     Date: 2014.02.04 17:11:02 -05'00'

7

8    AAERT Certified Electronic Transcriber CET**D-408

9

10   Veritext

11   200 Old Country Road

12   Suite 580

13   Mineola, NY 11501

14

15   Date:  November 14, 2013

16

17

18

19

20

21

22

23

24

25